UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| HERBERT SAMUEL CHRISTENSEN, JR., | &#124; | |
| | &#124; | |
| Plaintiff, | &#124; | Civil No. 5: 11-321-KKC |
| | &#124; | |
| v. | &#124; | |
| | &#124; | |
| UNITED STATES OF AMERICA, et al., | &#124; | **MEMORANDUM OPINION** |
| | &#124; | **AND ORDER** |
| Defendants. | &#124; | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Herbert Samuel Christensen, Jr., is an inmate confined at the Federal Medical Center in Lexington, Kentucky. Christensen, proceeding without an attorney, has filed a complaint asserting civil rights claims under 42 U.S.C. § 1983 and the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971); the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"); the Federal Tort Claims Act, 28 U.S.C. § 2671-80 ("FTCA"), the Privacy Act, 5 U.S.C. § 552a; and various pendent claims under Kentucky law. [R. 1] The Court has granted Christensen's motion to pay the filing fee in installments by prior Order. [R. 8]

The Court must conduct a preliminary review of Christensen's complaint because he has been granted permission to pay the filing fee in installments and because he asserts claims against government officials. 28 U.S.C. §§ 1915(e)(2), 1915A. A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). The Court evaluates Christensen's complaint under a more lenient standard

1

because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts the plaintiff's factual allegations as true, and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

## I

Christensen's complaint appears to assert five discernible claims, which the Court will discuss in turn. In doing so, the Court notes that Christensen's complaint is 67 pages long; provides an extensive description of facts; identifies thirty defendants; and cites numerous statutes, regulations, and policy documents. However, Christensen makes little or no effort to actually state claims by linking the three together, by explaining or suggesting how particular conduct by a given defendant states a cause of action under a particular statute. Nonetheless, the Court has given his complaint a liberal, and hence broad, construction, and will evaluate any cause of action which can reasonably be inferred from the allegations made.[1]

A.      Medical treatment for gastric ulcers.

Christensen indicates that in February 2005, Dr. Maria Marrero, his primary care physician employed by the Bureau of Prisons ("BOP"), requested that he be evaluated by an outside gastroenterologist. Two months later, Dr. Shedlofsky - a physician employed by the University of Kentucky Medical Center ("UKMC") - examined Christensen and recommended that an ultrasound be taken of his liver and an endoscopy performed on his upper GI tract. [R. 1, p. 28] However, it was not until September 16, 2005, that UKMC physician Dr. Razvan Arsenescu performed the

---

[1]   Christensen's complaint referred to and incorporated by reference approximately 100 exhibits. However, none of these documents were actually attached to the complaint when he originally filed it. This was apparently an oversight which Christensen has recently rectified. [R. 11]

endoscopy.

That examination indicated that Christensen had three bleeding gastric ulcers.  Christensen indicates that Dr. Arsenescu recommended that his prescription for enteric-coated aspirin be terminated, and that he be tested for *h. pylori* bacteria.  [R. 11-1, p. 14]  However, the doctor did not advise Christensen of his diagnosis, nor did he convey the test results or his recommendations to Drs. Marrero or Shedlofsky.  [R. 1, p. 29]  It was not until a medical conference with Dr. Shedlofsky on February 21, 2006, that he learned that the *h. pylori* tests recommended by Dr. Arsenescu had not been performed.  This test was performed on April 21, 2006, and indicated that *h. pylori* bacteria was present.  Dr. Marrero prescribed antibiotics for peptic ulcer on May 9, 2006.  [R. 1, p. 31]

Christensen complains that Drs. Marrero, Shedlofsky, and Arsenescu permitted unreasonable delays in his treatment, and failed to communicate adequately either with him or with one another to ensure prompt and effective treatment.  [R. 1, pp. 30-31]  Because Christensen does not directly explain how this conduct is actionable, the Court infers the nature of his claims by looking to two other portions of his complaint.  First, pages one through twenty-seven of Christensen's complaint are dedicated to identifying each of the 30 defendants, and attributing to each numerous legal duties and responsibilities.  The Court assumes that Christensen contends Drs. Marrero, Shedlofsky, and Arsenescu violated these duties by the actions described in the complaint.  [R. 1, pp. 15-16, 26]  Second, at the conclusion of what Christensen describes as his first cause of action, he includes a section titled "Proximate Cause to First Cause of Action" which offers some insight into the nature of his claims.  [R. 1, pp. 51-55]

Christensen suggests that Dr. Marrero's actions violated 18 U.S.C. § 4042 ("The Bureau of Prisons ... shall ... (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States ..."); BOP Program

3

Statement ("PS") 6031.01, *Patient Care*; PS 3906.21, *Bureau Mandatory Training Standards*; PS 3420.09, *Standards of Employee Conduct*; 5 C.F.R. § 2635.101(a) (provides general rules of ethical conduct applicable to all officers and employees of the executive branch, and requires "each employee [to] respect and adhere to the principles of ethical conduct set forth in this section, ..."); her duty of reasonable care; and Christensen's constitutional rights. [R. 1, pp. 15-16, 52-54] Christensen further suggests that Drs. Shedlofsky and Arsenescu violated their duties of reasonable care and his constitutional rights. [R. 1, pp. 26, 52-54]

First, throughout his complaint Christensen asserts that these and other defendants "violated" various Program Statements issued by the BOP. It is not clear that he intends to do so, but to the extent that Christensen is attempting to assert claims directly under the Program Statements, all such claims fail as a matter of law. The BOP's Program Statements are not "laws" which may be broken. Rather, they are merely internal agency guidelines and manuals, and they are not promulgated in compliance with the Administrative Procedures Act. *Reno v. Koray*, 515 U.S. 50, 61 (1995). Accordingly, they do not carry the force of law, and do not create substantive rights that may be enforced by any person. *United States v. Craveiro*, 907 F.2d 260, 264 (1st Cir. 1990); *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981). Because a federal employee's failure to adhere to a Program Statement does not constitute a violation of federal law, any "claim" under a Program Statement fails as a matter of law. *United States v. Loughner*, 782 F. Supp. 2d 829, 831 (D. Ariz. 2011); *Callahan v. Patton*, No. 07-CV-54-JMH, 2007 WL 1662695, at *5 (E.D. Ky. June 4, 2007).

Likewise, the ethical regulations applicable to federal employees of the executive branch, 5 C.F.R. § 2635 *et seq.*, do not create a private right of action enforceable at law. 5 C.F.R. § 2635.106(c) ("A violation of this part or of supplemental agency regulations, as such, does not create any right or benefit, substantive or procedural, enforceable at law by any person against the

United States, its agencies, its officers or employees, or any other person."); *Scherer v. United States*, 241 F. Supp. 2d 1270, 1285 (D. Kan. 2003).

Second, the Court interprets Christensen's references to violations of 18 U.S.C. § 4042, the duty of care, and to his constitutional rights as claims of medical negligence and of deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

With respect to his constitutional claims, they must fail as a matter of law because he failed to timely exhaust his administrative remedies, because they are barred by the statute of limitations, and because his allegations fail to state a claim of deliberate indifference. The events about which Christensen complains occurred no later than September 16, 2005, when Dr. Arsenescu performed his endoscopy, and April 21, 2006, when the test for *h. pylori* bacteria was performed. BOP regulations require an inmate to file a grievance regarding a matter within twenty days after the events or conduct about which he complains. 28 C.F.R. § 542.14(a). Christensen states that he did not file a grievance regarding his medical treatment until January 24, 2011, nearly five years after the events he describes. [R. 4, p. 1] Federal law requires inmates to exhaust their administrative remedies properly, which includes meeting the agency's deadlines for filing and complying with other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Because "*Woodford* makes clear that prisoners cannot satisfy the PLRA's exhaustion [requirement] by filing an untimely or otherwise procedurally defective administrative grievance," *Brewer v. Corrections Corp. of America*, No. 7:09-CV-89-KKC, 2010 WL 398979 (E.D. Ky. Jan. 27, 2010), Christensen has procedurally defaulted this claim, and it must be dismissed. *Davis v. United States*, 272 F. App'x 863, 865-66 (11th Cir. 2008) (affirming dismissal of Eighth Amendment deliberate indifference claim where grievance to warden filed outside of 20-day period).

Christensen's constitutional claims are also barred by the applicable statute of limitations.

5

With respect to his Eighth Amendment claims, neither the judge-made remedy afforded by *Bivens* nor the statutory remedy authorized by 42 U.S.C. § 1983 establish a limitations period.  Instead, federal courts apply the most analogous statute of limitations from the state where the events occurred.  *Wilson v. Garcia*, 471 U.S. 261, 268-71 (1985).  The medical treatment about which Christensen complains occurred in Kentucky, and therefore Kentucky's residual one-year statute of limitations for asserting personal injury claims applies.  Ky. Rev. Stat. § 413.140(1)(a); *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003).  The events described in the complaint occurred between February 2005 and May 2006, but Christensen did not file suit until October 2011, well past the one-year limitations period.  This remains true even if, as Christensen alleged in his January 24, 2011, grievance, he did not discover the delay in treatment for his ulcers until he reviewed copies of his medical records from UKMC in June 2009.  [R. 11-3, p. 4]  While the running of the statute of limitations can be tolled during the period when administrative remedies are exhausted as required by law, such equitable tolling is not warranted where, as here, the prisoner unreasonably delayed in pursuing those grievances.  *Cuco v. Federal Medical Center - Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *25-26 (E.D. Ky. 2006) (*citing Miller v. Collins*, 305 F.3d 491, 495-96 (6th Cir. 2002), *aff'd*, 257 F. App'x 897 (6th Cir. 2007).  Even accepting Christensen's assertion that he did not and could not have become aware of a possible claim until June 2009 when he received copies of his medical records from UKMC, he still did not file any grievance regarding that care until October 2011, some 19 months later.  Because Christensen did not diligently pursue the exhaustion of his administrative remedies, no equitable tolling is warranted, and his claims remain time barred.

Finally, Christensen's allegations fail to state a claim of deliberate indifference under the Eighth Amendment.  Such a claim requires an allegation that the medical care provider act with a knowing and culpable state of mind demonstrated by circumstances such as "intentionally denying

6

or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). Here, Dr. Arsenescu recommended merely that Christensen "Avoid NSAIDs." [R. 11-1, pp. 14-15] However, Marrero continued Christensen's prescription for enteric coated aspirin because, apart from his ulcers, he needed long-term treatment for his cardiac problems while reducing the gastric inflammation caused by the aspirin. [R. 11-3, p. 6] While that aspirin may have, to some degree, exacerbated symptoms associated with Christensen's gastric upset, Dr. Marrero's decision to continue his prescription for it was evidently based upon her medical judgment that its benefits to his long-term cardiac health outweighed its detrimental side effects. Such balancing of competing goals is one of medical judgment, and is the antithesis of deliberate indifference to Christensen's medical care. *Cuco*, 2006 WL 1635668, at *34. Christensen's Eighth Amendment claims will therefore be dismissed.

Christensen's claims of medical negligence must be analyzed separately for the federal and state defendants. With respect to a claim against BOP physician Marrero, a negligence action against her directly is barred by the Westfall Act, which immunizes federal employees from tort liability for actions taken within the scope of their employment. 28 U.S.C. § 2679(b)(1); *Roberts v. United States*, 191 F. App'x 338 (6th Cir. 2006). Instead, as Christensen has done here, he may pursue a claim directly against the United States for the alleged negligence of one of its employees under the FTCA. 28 U.S.C. § 2674. Before he may do so, however, he must first present his claim to the BOP for possible settlement pursuant to 28 U.S.C. § 2675, which must be done within two years after the cause of action accrues, and if the BOP denies the claim, he must then file suit within six months. 28 U.S.C. § 2401(b). Here, while Christensen indicates that he did file a tort claim with the BOP regarding Dr. Marrero's care, he did not file it until April 11, 2011, approximately five years after

7

the conduct he complains of.  [R. 4, p. 2]  Because Christensen did not file a timely request for administrative settlement, his FTCA claim is time-barred.  *Cf. Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331-32 (6th Cir. 2008); *Smith v. United States*, No. 1:10-cv-112, 2011 WL 4899933, at *11-15 (M.D.N.C. Oct. 14, 2011).  The failure to file a timely FTCA claim with the BOP precludes the exercise of subject matter jurisdiction over his claim, a non-waivable defect which requires dismissal of his claim.  *Huddleston v. United States*, 485 F. App'x 744 (6th Cir. 2012) ("Timeliness of suit is one of the conditions of the government's waiver of sovereign immunity under the FTCA, and the district court lacks subject matter jurisdiction to proceed under the FTCA if a plaintiff fails to satisfy the FTCA's timing requirements set forth in § 2401(b).") (*quoting In re Franklin Sav. Corp.*, 385 F.3d 1279, 1287 (10th Cir. 2004)); *Zander v. United States*, 494 F. App'x 386 (4th Cir. 2012) (holding that the limitations period established by § 2401(b) is a jurisdictional prerequisite to suit).

As for a medical malpractice claim against Drs. Shedlofsky and Arsenescu, Kentucky law requires such a claim to be filed within one year after the conduct complained of. Ky. Rev. Stat. 413.140(1)(e); *Harrison v. Valentini*, 184 S.W.3d 521, 523 (Ky. 2005).  Because Christensen's claims accrued in 2005 and 2006, his complaint filed in 2011 is filed well beyond the applicable limitations period.  In addition, to the extent Christensen is attempting to assert a tort claim under Kentucky law against UKMC arising out of the medical care provided by two of its physicians, such a claim is barred by the governmental immunity afforded by the Kentucky Constitution. *Withers v. University of Kentucky*, 989 S.W.2d 340 (Ky. 1997) (holding that UKMC is entitled to governmental immunity from tort claims).  Because each of Christensen's claims related to the 2005-06 treatment for his gastric ulcers fails for the reasons stated, the Court will dismiss these claims with prejudice.

    B.    <u>Refusal to provide composite toe work boots</u>.

Christensen alleges that he has long suffered from complications arising from an old injury to his ankle which affect his gait. He indicates that in August and September 2005, a skin culture revealed that he had a staph infection on his foot, which took more than one course of antibiotics to resolve. [R. 1, p. 32] Several years later, in December 2009 Christensen requested that his feet be checked and that he be considered for special shoes or a soft shoe pass. Following an examination by an orthotic foot specialist in April 2010, his feet were measured for composite toe work boots, and a request was placed for their manufacture and purchase. After waiting several months, on July 1, 2010, Christensen was advised that FMC's Clinical Director, Dr. Growse, had refused to approve the request. [R. 1, pp. 33-34]

Christensen contends that several other inmates with foot conditions less serious than his own were approved for special shoes, suggesting that Dr. Growse displayed favoritism towards those inmates in violation of PS 3420.09. Christensen further notes that in May 2009 he wrote a letter to the President of the United States asserting that Dr. Growse was, at that time, delaying a heart procedure that Christensen was supposed to have received [R. 1, p. 32], and asserts that Dr. Growse retaliated against him for that letter by refusing to approve the request for his composite toe work boots. [R. 1, p. 35] On August 11, 2010, Christensen raised these contentions against Dr. Growse in a grievance he filed with the prison. On April 11, 2011, Christensen also filed a request with the BOP for administrative settlement of a claim arising out of these facts under the FTCA, which was denied on June 29, 2011. [R. 4, p. 3]

Christensen may not assert a claim for favoritism under PS 3420.09 for the reasons previously stated. With respect to his claim of retaliation under the First Amendment, the Supreme Court has indicated that such a claim is not cognizable under *Bivens*. While the Supreme Court has

expressly acknowledged the availability of the remedy for claims arising under the Fourth and Eighth Amendment, it has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001). In *Bush v. Lucas*, 462 U.S. 367 (1983), the Supreme Court held that a First Amendment retaliation claim was not cognizable under *Bivens*, but its conclusion was heavily dependent upon the availability of a comprehensive statutory regime available to the plaintiff, a federal civil servant. *Id.* at 387-89. Nonetheless, the Supreme Court has consistently expressed a hostility to the notion without clearly deciding the question. *Cf. Reichle v. Howards*, __ U.S. __, 132 S. Ct. 2088, 2093 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims.")

Even assuming that *Bivens* does afford a remedy, Christensen's allegations regarding retaliation fail to state a claim. To assert a claim for retaliation under the First Amendment, "[m]ere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Boyd v. T'Kach*, 2008 WL 784398, at *5 (D. Colo. Mar. 20, 2008); *see also Harbin–Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005). Specifically, to establish causation, the plaintiff must set forth "a chronology of events from which retaliation may plausibly be inferred." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). Christensen states only that "he mentioned defendant Dr. Growse as one of the persons who were stalling his heart procedure due to budgetary constraints" in a letter sent to the President ten months before. [R. 1, p. 32] Christensen does not allege that Dr. Growse ever became aware of the letter, or that he mentioned it to Christensen, and ten months passed between the sending of the letter and the allegedly retaliatory act. Christensen has failed to allege facts sufficient to support a reasonable inference of causation. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010).

Although his complaint does not expressly attempt to assert a FTCA claim arising out of

these events, Christensen filed a separate document indicating that he filed, and the BOP denied, a request for administrative settlement of a claim arising out of them. [R. 4, p. 3] In his Standard Form 95 mailed on February 21, 2011, Christensen stated that he was denied his "recommended medical boots," that the denial constituted negligence, and that as a result he had suffered from sores and pain. [R. 11-4, p. 1] The BOP denied this claim on June 29, 2011. [R. 11-4, p. 8]

In his Form 95, Christensen contended that the failure to provide him with composite toe boots violated his constitutional rights. Such claims must be pursued under *Bivens* and § 1983, and may not be pursued under the FTCA, because the United States has not waived its sovereign immunity from claims asserting constitutional torts. *FDIC v. Meyer*, 510 U.S. 471, 477–78 (1994); *Jackson v. United States*, 114 F.3d 1187, 1997 WL 321123, at *2 (6th Cir. June 11, 1997) (Table) ("Although the United States has consented to suit under the FTCA, that Act is inapplicable to Jackson because it does not reach alleged due process and other federal constitutional torts."). However, Christensen also contended that the failure to provide him with composite toe boots constituted medical negligence. This claim appears to have been exhausted and timely filed, and the Court will direct the United States to file a response to this aspect of Christensen's FTCA claim.

C.     Failure to apply seat belts during transport.

Christensen alleges that since December 27, 2002, on many occasions he has been driven from the prison to appointments with outside medical providers on transport vans without seat belts being applied to him. [R. 1, p. 39] On such trips prisoners are secured by hand cuffs, ankle cuffs, and a molly chain, and therefore cannot buckle the seat belt themselves. [R. 1, p. 37] On these trips, Christensen was accompanied by BOP officers, as well as employees of the Wackenhut Corporation, a private security firm under contract with the BOP to provide security and escort services. Christensen explains that his claims are limited to those events occurring on or after May 24, 2009.

11

Christensen complained about the failure of the guards to seatbelt him to Captain of Security Brian Johnson in May 2009. While Johnson assured him that the problem would be addressed, Christensen indicates that he continued to be transported without seat belts. [R. 1, p. 40] Christensen also complained to Safety Manager Norman Updegraff on July 6, 2009, but three weeks later he was again driven to UKMC without seat belts. [R. 1, p. 41] Similar trips occurred on January 19, 2010; June 8, 2010; July 6, 2010; and May 19, 2011. [R. 1, pp. 40-42, 49] Christensen alleges that as a result of these trips he suffered "the stress [of] having to continuously ride in a van without the use of seatbelts ..." [R. 1, p. 53]

Christensen contends that the failure to secure his seat belt while being driven to medical appointments violated numerous BOP Program Statements; constitutes cruel and unusual punishment under the Eighth Amendment [R. 1, p. 52]; his filing of two FTCA claims indicates that he further claims this conduct amounted to negligence, [R. 1, pp. 48, 50]; and he contends that it violates several provisions found in Chapter 189 of the Kentucky Revised Statutes.

Christensen may not assert a claim under BOP Program Statements for the reasons previously stated. And while the failure to properly secure an inmate in a motor vehicle during transport is cause for concern, Christensen's claims under *Bivens* and the FTCA fail to state a claim because he alleges that he suffered only mental or emotional suffering as a result of the conduct complained of, not physical injury. Had Christensen actually been involved in an accident, and the failure to secure his seat belt caused him some physical harm, he could doubtless pursue his claims, exposing the responsible parties to significant liability. *Cf. Lefler v. Unknown Party #1*, No. 1:10-CV-800, 2011 WL 3100389, at *8 (W.D. Mich. June 29, 2011). But Christensen makes no such allegation, and instead complains only that he suffered "the stress [of] having to continuously ride in a van without the use of seatbelts ..." [R. 1, p. 53] Federal law precludes prisoners from making freestanding

federal claims for purely emotional injury.  With respect to claims under § 1983 and *Bivens*, 42 U.S.C. § 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of physical injury."  Similarly, with respect to claims under the FTCA, 28 U.S.C. § 1346(b)(2) provides that "[n]o person convicted of a felony ... while serving a sentence may bring a civil action against the United States ... for mental or emotional injury suffered while in custody without a prior showing of physical injury."  The provisions have repeatedly been applied to bar claims functionally indistinguishable from those asserted by Christensen here.  *Tsosie v. Bureau of Prisons*, No. 3:CV-10-2360, 2012 WL 484935, at *3-5 (M.D. Pa. Sept. 27, 2012) (holding that plaintiff's claims under *Bivens* and FTCA for duress and psychological injury suffered when BOP officer drove van at high rate of speed and without securing plaintiff in a seat belt were barred by § 1997e(e) and § 1346(b)(2), respectively, as there was no allegation of physical injury incident to his emotional distress); *Shain v. Grayson Co., Ky.*, No. 4:11CV-P84-M, 2011 WL 5122667, at *4 (W.D. Ky. Oct. 28. 2011) (same); *Charest v. Dortch*, 1999 U.S. Dist. LEXIS 18318 at **21-22 (S.D. Ala. Oct. 25, 1999) (same).  In addition, Christensen's allegations state no claim under the Eighth Amendment.  *Cf. Dexter v. Ford Motor Co.*, 92 F. App'x 637, 641 (10th Cir. 2004) (concluding that "failure to seatbelt does not, of itself, expose an inmate to risks of constitutional dimension" because "[t]he eventuality of an accident is not hastened or avoided by whether an inmate is seatbelted").

Christensen alleges that several BOP officers, as well as employees of Wackenhut corporation, violated Kentucky's seat belt law.  Ky. Rev. Stat. § 189.125(6) provides that "[a] person shall not operate a motor vehicle manufactured after 1981 on the public roadways of this state unless the driver and all passengers are wearing a properly adjusted and fastened seat belt."  In addition, Kentucky law provides that "[a] person injured by the violation of any statute may recover from the

offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation.") Ky. Rev. Stat. § 446.070.  However, the latter provision merely "codifies the common law doctrine of negligence *per se* in Kentucky.  Negligence *per se* is merely a negligence claim with a statutory standard of care substituted for the common law standard of care." *GATX Corp. v. Addington*, 879 F. Supp. 2d 633, 651 (E.D. Ky. 2012) (internal quotation marks omitted) (*citing Young v. Carran*, 289 S.W.3d 586, 589 (Ky. App. 2008)).   Thus, Christensen's claim that the officers employed by the BOP and Wackenhut were negligent *per se* for violating Kentucky's seat belt law is simply a negligence claim which must be directed against the United States under the FTCA, 28 U.S.C. § 2679(b)(1), and fails for the reasons discussed immediately above.

Christensen has recently filed a "Supplemental Pleading and Joinder of Party" in which he contends that on July 9, 2012, and September 6, 2012, he was again transported in a van, and either seat belts were applied to him in an unsafe and improper manner or were not applied at all. Christensen seeks to amend his complaint to include a claim regarding these recent incidents, as well as to add Captain David Carpenter, the Captain of Correctional Officers, as a new defendant.  [R. 10] Ordinarily, a plaintiff is entitled to amend its pleading once as a matter of right if done within twenty-one days after a responsive pleading is required.  Fed. R. Civ. P. 15(a)(1)(B); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421 (6th Cir. 2000), but a district court may deny a requested amendment where the proposed amendment would be futile, such as where the newly-added claim is subject to dismissal.  *Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006).  Because the new claims Christensen proposes are subject to dismissal for the same reasons stated above, the Court will deny the proposed amendment as futile.

D.     Grievances not properly processed.

Throughout his description of the events involved in his first three claims, Christensen alleges that various officials failed to follow BOP rules regarding the processing of inmate grievances.  First, Christensen alleges that on July 20, 2010, Lieutenant John Fowler would not permit him to sign the informal grievance he filed regarding the failure to seat belt him during van trips to outside medical providers, stating only that he was aware of the issue and wanted additional time to investigate Christensen's claims.  [R. 1, p. 42]  Nonetheless, Christensen filed his formal grievance with the warden on July 31, 2010.  [R. 1, p. 43]

Second, Christensen asserts that on August 11, 2010, he filed a grievance regarding the failure to approve the request to provide him with composite toe work boots, a grievance that Hattie Small, the Associate Warden in charge of Programs and Operations but acting on behalf of Warden Deborah Hickey, denied on August 23, 2010.  [R. 4, p. 1; R. 1, p. 35]  Christensen contends that in doing so, Small falsely stated that his records contained no mention of foot pain.  [R. 1, p. 35]

Third, on February 11, 2011, Administrative Remedy Coordinator Rosie Harless sent him a notice acknowledging receipt of his grievance regarding treatment of his gastric ulcers.  [R. 1, pp. 35-36]  On February 17, 2011, D. K. Williams, the Associate Warden of Operations and Programs but acting on behalf of Warden Deborah Hickey, denied this grievance on February 17, 2011.  Christensen contends that in doing so, Williams stated that Dr. Arsenescu's report was reviewed by his other physician on December 22, 2005, a statement Christensen contends is not correct.  [R. 1, pp. 36-37]

Fourth, Christensen alleges that on February 12, 2011, he was called into the office of Correctional Counselor Shamahl Jennings, who complained that Christensen had told Associate Warden Williams that Jennings had not properly filed one of Christensen's prior grievances.  [R. 1,

p. 44] Christensen contends that Jennings violated BOP policy by not processing this first grievance properly [R. 1, p. 46]

Finally, Christensen alleges that on March 4, 2011, BOP officers Shehan and Reed called him into the lieutenant's office and questioned him about the second grievance he had filed on February 12, 2011, regarding the use of seatbelts. During this discussion, Christensen states that he felt threatened when officer Shehan "rolled his chair over next to plaintiff in an intimidating manner." [R. 1, p. 46] Because of this conduct and because of his belief that "I simply wasn't going to get anywhere," Christensen withdrew this grievance. [R. 1, pp. 47-48]

Christensen claims that these actions, including the loss of grievances or the failure to properly process them, as well as the use of "intimidating acts" in an effort to convince him to withdraw them, violates his right to seek redress of grievances. [R. 1, p. 52] These contentions are without merit. Because a prisoner has no constitutional right to access to any informal grievance procedure, a prison official's failure to properly adhere to its terms does not state any claim of constitutional dimension. *Patel v. Moron*, 897 F. Supp. 2d 389, 402 (E.D.N.C. 2012); *Hollins v. Cross*, No. 5:09CV63, 2010 WL 1066544, at *3 (N.D. W.Va. Mar. 16, 2010) (*citing Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994)). Nor does such a failure or refusal by prison officials deprive an inmate of meaningful access to the courts. While 28 U.S.C. § 1997e(a) requires prisoners to exhaust available administrative remedies, a prison grievance procedure may become "unavailable" if prison officials fail to properly process grievances and the prisoner attempts, without success, to invoke any curative mechanisms provided by the administrative process. *Murphy v. Inmate Systems Mgmt., Inc.*, No. 1:03CV170, 2008 WL 793631, at *12 (S.D. W.Va. Dec. 30, 2008) ("BOP employees' refusal to respond to inmates' administrative complaints and conduct which otherwise prevents inmates from pursuing such complaints through the administrative remedy process making the process

16

unavailable are not actionable under *Bivens*. Rather, the legal consequence of conduct which makes the administrative remedy process unavailable to inmates is that the door to federal Court is open to proceedings on the merits of their claims without requiring their exhaustion of administrative remedies.")  Because any failure by prison officials to strictly comply with the BOP's inmate grievance program does not impede an inmate's right to the petition the courts for the redress of grievances, these claims will be dismissed.

      E.    <u>Medical records request</u>.

Christensen indicates that on June 1, 2009, he sent a letter to the University of Kentucky Medical Center requesting copies of his medical records, specifically those related to trips to UKMC in May and June 2008 for chest pains.  On June 23, 2009, Christensen received approximately 477 pages of his medical records.  [R. 1, p. 55; R. 1-1, p. 2]  On August 2, 2009, Christensen made a second written request to UKMC for a copy of the transcript of the catheter ablation and pulmonary vein isolation procedure which was performed on July 27, 2009.  While the records department provided him with a copy of the transcript, it did not provide him with a copy of the billing statement as he had requested.  [R. 1, p. 56]

When his second and third requests for the billing statement went unanswered, in April 2010 Christensen sent a fourth and fifth written request to the president of UKMC and University of Kentucky President Dr. Lee Todd.  Shortly thereafter, on May 6, 2010, BOP officer Jennings told Christensen that he should stop requesting his medical records from UKMC and instead seek them directly from the prison.  Christensen states that he considered this to be "an implied threat to his 1st Amendment rights to freedom of speech and to obtain redress of grievances and an implied threat of retaliation for him exercising his 1st Amendment right to obtain a copy of his medical file ..."  Accordingly, Christensen filed a grievance requesting a copy of the billing statement and

17

complaining regarding Jennings's statements, and sent a cop-out to the medical department requesting the medical records. [R. 1, pp. 57-58]

Christensen indicates that on May 27, 2010, defendant Fraley advised him that because the bills for his medical care were paid by the BOP, he could not receive a copy of the billing statement. Further, on June 24, 2010, in response to his informal request to staff, associate warden Williams explained to Christensen that because a billing statement is not part of a patient's medical records, a request under FOIA for a copy of that document would have to be made through the BOP's FOIA branch in Washington, D.C. [R. 1, p. 59]

On May 3, 2011, Christensen sent written requests for a copy of the billing statement to the BOP's FOIA branch in Washington, D.C., to Dr. Lee Todd at the University of Kentucky, and to UKMC's patient accounts department. [R. 1, p. 60] UK mailed a copy of the billing statement to Christensen on May 23, 2011, which he received on June 10, 2011. [R. 1, pp. 61-62] UKMC mailed 19 pages of documents responsive to Christensen's FOIA request, which he received on June 20, 2011. [R. 1, p. 63] The BOP responded to Christensen's FOIA request on June 27, 2011, indicating that it could not find the billing statement he was looking for.

Christensen appears to contend that these actions violated (or are otherwise actionable under) the First, Fifth, and Fourteenth Amendments to the Constitution of the United States; the FTCA; the FOIA; the Privacy Act; the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); the Uniform Health Care Information Act ("UHCIA"); Program Statement 5265.11; Ky. Rev. Stat. 189.125(6); Ky. Rev. Stat. 446.070; Ky. Rev. Stat. 189.450; and Ky. Rev. Stat. 304.17A-555.

As a threshold matter, with the exception of FOIA, Christensen has failed to make any reasonable effort to articulate a claim for relief by identifying the conduct he alleges violated a particular statute or otherwise provided a basis for a cause of action. "More than bare assertions of

legal conclusions is ordinarily required to satisfy federal notice pleading requirements." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). Simply labeling the defendants' actions - whatever they might have been - as "negligent" or "wrongful" deprives the defendants of notice of the conduct complained of, a notice to which they are entitled. *16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, 2013 WL 4081909 (6th Cir. Aug. 14, 2013) ("Rule 8(a)(2) ... imposes legal *and* factual demands on the authors of complaints.") It is not enough for Christensen to simply make numerous factual allegations and identify one or more statutes by title and section number, leaving it to the court or the defendants to connect the dots on his behalf. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."). Christensen's claims regarding his medical records are therefore dismissed for failure to state a claim.

In addition, regardless of the exact nature of his claims, the statutes and provisions upon which he appears to rely plainly do not afford any basis for relief. First, Christensen complains that the delay in receiving UKMC's response to his medical records request was caused by an improper interference with his mail by one or more BOP officers, individuals he does not identify, contrary to BOP Program Statement 5265.11. [R. 1, p. 61] However, as previously noted, the BOP's Program Statements are not "laws" which may be violated, and a "claim" for conduct contrary to their terms fails as a matter of law. *United States v. Loughner*, 782 F. Supp. 2d 829, 831 (D. Ariz. 2011); *Callahan v. Patton*, No. 07-CV-54-JMH, 2007 WL 1662695, at *5 (E.D. Ky. June 4, 2007).

Second, Christensen suggests that the defendants violated Ky. Rev. Stat. 189.125(6); Ky. Rev. Stat. 189.450; and Ky. Rev. Stat. 446.070. [R. 1, p. 65] Any attempt to assert claims under these statutes - which relate to the use of seatbelts, stopping a vehicle by the roadside, and

19

Kentucky's *per se* negligence rule - relative to Christensen's allegations with respect to his medical records, appears to be an oversight, as the subject matter of these statutes is entirely unrelated to the facts described in this claim.  Likewise, Ky. Rev. Stat. 304.17A-555 relates to a patient's right to privacy of medical records related to his or her mental health or chemical dependency, matters wholly unrelated to Christensen's treatment for cardiac issues.

Third, Christensen asserts that he made his medical records requests under the Uniform Health Care Information Act.  [R. 1, p. 58]  However, the UHCIA is merely a uniform act promulgated by the National Conference of Commissioners on Uniform State Law in 1985.  Such uniform acts do not carry the force of law unless a state legislature formally adopts the provisions and they are signed into law.  Because the UHCIA was only adopted by the states of Montana and Washington, it is of no legal effect in Kentucky.  Further, the UHCIA provides only misdemeanor criminal, rather than civil, sanctions for violations of its terms, sanctions which Christensen has no standing to pursue.  For all of these reasons, Christensen can state no claim under it.

Fourth, Christensen contends that the "unauthorized disclosure" of his medical records violates the Privacy Act, 5 U.S.C. § 552a.  The Privacy Act permits an individual to obtain copies of records maintained by federal agencies which contain personal information about them, and precludes the disclosure of such records absent the individual's consent, subject to a variety of enumerated exceptions.  5 U.S.C. § 552a(b).  Of obvious relevance here is the exception permitting disclosure "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties."  5 U.S.C. § 552a(b)(1).  But the defect in Christensen's claim under the Privacy Act is more fundamental:  by its terms, the Privacy Act only authorizes a cause of action against the federal agency itself, not against federal employees or officers. *Williams v. United States*, No. 6:10-cv-168-KSF, 2011 WL 1113946, at *7 (E.D. Ky. Mar.

24, 2011) (*citing Williams v. Bezy*, 97 F. App'x 573, 574 (6th Cir. 2004)).  Christensen has not asserted this claim against the Bureau of Prisons, and his attempt to assert it directly against federal officers fails as a matter of law.  The Privacy Act likewise does not permit a claim against an independent contractor that merely provides services to a federal agency.  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008).

Fifth, Christensen claims that the defendants also violated HIPAA by disclosing his medical records.  [R. 1, p. 65]  Christensen indicates that his claims derive from both HIPAA, 42 U.S.C. § 1320d *et seq.*, and the 2009 amendments to HIPAA as part of the Health Information Technology for Economic and Clinical Health Act ("HITECH"), codified at 42 U.S.C. § 17921.  However, HIPAA vests enforcement authority with the Secretary of the Department of Health and Human Services, and also expressly provides states attorneys general with authority to sue as *parens patriae*.  42 U.S.C. § 1320d-5(d).  Accordingly, there is no private right of action to enforce the terms of HIPAA.  *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) (concluding that HIPAA confers no private cause of action); *see also Adams v. Eureka Fire Protection Dist.*, 352 F. App'x 137, 139 (8th Cir. 2009) (holding that HIPAA cannot be enforced through either an implied private right of action or through § 1983); *Carpenter v. Phillips*, 419 F. App'x 658, 659 (7th Cir. 2011); *Siegler v. Ohio State University*, No. 2:11–cv–170, 2011 WL 1990570, at *8 (S.D. Ohio May 23, 2011).  Christensen therefore lacks standing to assert any claim for the violation of HIPAA.

Sixth, Christensen contends that the defendants violated FOIA by failing to provide him with copies of his medical records as he requested.  [R. 1, p. 64]  However, FOIA only imposes obligations upon, and permits suit against, an "agency" as that term is defined in 5 U.S.C. § 551(a).  5 U.S.C. § 552(a), (a)(4)(B).  Thus, the only proper defendant to a claim under FOIA in light of facts alleged by Christensen is the BOP, an entity which he did not join in this suit as a defendant.  The

Court must therefore dismiss any claims under FOIA against the individually named defendants. *Cf. Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (C.A.D.C. 2006); *Batton v. Evers*, 598 F.3d 169, 173 n.1 (5th Cir. 2010) ("A FOIA plaintiff may not assert a claim against an individual federal official; the proper defendant is the agency."). Likewise, FOIA does not permit a claim against a state agency. *Rimmer v. Holder*, 700 F.3d 246, 258 (6th Cir. 2012) ("it is beyond question that FOIA applies only to federal and not to state agencies.") (internal quotation marks omitted); *Sykes v. United States*, 507 F. App'x 455, 463 (6th Cir. 2012) (holding that FOIA does not apply to state university hospital); *Lathrop v. Juneau & Associates, Inc. P.C.*, 220 F.R.D. 330, 336 (S.D. Ill. 2004).

Seventh, Christensen appears to contend that the delay in providing him with the billing statement he requested violated his First Amendment right to seek redress of grievances and his right to due process of law under Fifth and Fourteenth Amendments. [R. 1, pp. 65-66] These contentions are without merit. Christensen's due process claims fail because there is no liberty or property interest in possessing the government records at issue; the right to obtain such documents is statutory, rather than constitutional, in nature. More fundamentally, the comprehensive regime created by FOIA precludes the availability of an implied remedy under *Bivens*. *Cooper v. Stewart*, 763 F. Supp. 2d 137, 140-41 (D.D.C. 2011) (*citing Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 777 (D.C. Cir. 2002)). Christensen's claim regarding his right of access to the courts likewise fails because any delay in receiving the documents he requested in no way impeded his ability to seek redress of grievances in the courts, *cf. Trentadue v. Integrity Committee*, 501 F.3d 1215, 1236-37 (10th Cir. 2007), and because FOIA's comprehensive scheme negatives the availability of a remedy under *Bivens*. *Kroposki v. F.A.A.*, No. 308CV1519(AWT), 2009 WL 2710223, at *2 (D. Conn. Aug. 26, 2009).

**II**

Based on the foregoing, the Court will dismiss Christensen's claims with prejudice, with the sole exception of his claim against the United States under the FTCA alleging that the failure of the BOP's health care professionals to provide him with composite toe boots constituted medical negligence, as described in Administrative Tort Claim Number 2010-03750.  [R. 11-4, p. 1-6]  Because the Court has granted Christensen's motion to proceed without prepayment of the filing fee, the Lexington Clerk's Office and the United States Marshals Service ("USMS") will serve the summons and complaint on his behalf.  Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d).

Accordingly, **IT IS ORDERED** that:

1.  Christensen's Supplemental Pleading and Joinder of Party [R. 10] is **DENIED**.

2.  All claims in Christensen's complaint [R. 1] which relate to the alleged (A) failure to provide proper medical care for his ulcers; (C) failure to properly apply seatbelts during van transportation; (D) failure to properly respond to his inmate grievances; and (E) failure to provide him with copies of his medical records, are **DISMISSED WITH PREJUDICE**.

3.  All claims in Christensen's complaint [R. 1] which relate to (B) the failure to provide him with composite toe work boots, **with the exception** of claims asserted under the Federal Tort Claims Act, are **DISMISSED WITH PREJUDICE**.

4.  A Deputy Clerk in the Lexington Clerk's Office shall prepare a "Service Packet" consisting of the following documents for service of process upon the United States of America:

      a.  a completed summons form;

      b.  the complaint [R. 1];

      c.  this Memorandum Opinion and Order; and

      d.  a completed USM Form 285.

5.      The Lexington Deputy Clerk shall deliver the Service Packet to the USMS in Lexington, Kentucky, and note in the docket the date that the Service Packet was delivered.

6.      The USMS shall serve the United States of America by sending a Service Packet by certified or registered mail to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky; and the Office of the Attorney General of the United States in Washington, D.C.

This the 26th day of August, 2013.

**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**

24